UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| JOSE LUIS GARCIA MORENO, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>T-MOBILE USA, INC.,<br><br>Defendant. | NO.<br><br>PLAINTIFF'S CLASS ACTION COMPLAINT<br><br>JURY TRIAL DEMANDED |

## CLASS ACTION COMPLAINT

Plaintiff Jose Luis Garcia Moreno ("Plaintiff"), by and through his attorneys, individually and behalf of all others similarly situated, brings this action against Defendant T-Mobile USA, Inc. ("T-Mobile"). Plaintiff alleges the following based on personal knowledge as to his own acts and based upon the investigation conducted by his counsel as to all other allegations:

### I.    INTRODUCTION

1.    Plaintiff brings this consumer class action lawsuit because Defendant developed, marketed, distributed, and advertised the launch of their 5G Network (the "Network") without disclosing to its customers, including former Sprint customers following the merger between Sprint and T-Mobile, that they intended to shut down older networks without adequately addressing Network incompatibilities for numerous devices dependent upon them, including but not limited to the Samsung Galaxy S10 5G, LG V50

ThinQ 5G, HTC 5G Hub, OnePlus 7 Pro 5G, and various tablets, security systems, and other devices (the "Class Devices"). Many of the Class Devices have or will become wholly unusable as the non-Network older Sprint and T-Mobile networks with which they are compatible, including Sprint's 3G (CDMA), 5G, and LTE networks as well as T-Mobile's 3G UMTS network, get shutdown (the "Defect"). The Defect represents a serious omission and is therefore a material fact. Defendant has been unwilling to acknowledge the Defect, much less remedy it, and Plaintiff hereby seeks to correct that injustice.

2.      Defendant marketed the Network as "[t]he next generation of wireless service" that delivers "coverage and mobility with blazing fast download speeds."[1] Sprint, which is now owned by T-Mobile, advertised that its 5G network "covers approximately 2,100 square miles, with approximately 11 million people expected to be covered in total across all nine market areas in the coming weeks, more than any other U.S. carrier to date."[2]

3.      Defendant marketed that, along with three other 5G-enabled devices, it would expand its selection of 5G ready devices to include the OnePlus 7 Pro 5G and "give Sprint customers a truly mobile 5G experience all across these great cities."

4.      Keeping the, at-the-time, upcoming merger in mind, and actively advocating for it, Sprint pitched one advantage would allow the carriers "to accelerate the deployment of a ubiquitous, nationwide 5G network that includes coverage in rural locations." Within months of touting the deployment of Sprint's own 5G network, on July

---

[1] Sprint Lights Up True Mobile 5G in New York City, prnewswire.com (Aug. 27 2019), *available at* https://www.prnewswire.com/news-releases/sprint-lights-up-true-mobile-5g-in-new-york-city-300907615.html (last visited January 5, 2021).
[2] Id.

PLAINTIFF'S CLASS ACTION COMPLAINT - 2
Case No.

2, 2020, T-Mobile shut down Sprint's 5G network.[3] Tech websites noted the inoperability of Sprint's 5G-enabled devices, including the OnePlus 7 5G, on T-Mobile's 5G network.[4]

5.      The shutdown of Sprint's 5G network left approximately 75,000 sold 5G phones without the ability to receive a 5G signal.[5] Rather than offer owners of these phones free upgrades, customers would have to switch their phone and phone plan to a new offering from T-Mobile.

6.      The inability to connect to a 5G network, despite some being equipped with a 5G-enabled modem, limits the capabilities of these phones and devices to what is already available on 4G LTE-only devices. Purchasers of 5G-enabled phones paid a premium to benefit from massive improvements in download speeds and lower latency enabled by 5G networks. Rather than achieving download speeds 100 times faster on a 5G network, to a top speed of 20 gigabytes per second, owners of 5G devices will be limited to a max download speed of 100 megabytes per second, with real world performance topping out at 35 megabytes per second. Latency, too, increases between the two networks, from one millisecond on a 5G network to fifty milliseconds on a 4G network.[6]

7.      Dozens of owners and lessees of 5G-enabled phones previously compatible with Sprint's network have voiced complaints on various online forums. For example, two complaints lodged with the Consumer Affairs website describes the frustration felt by those whose devices are no longer supported because of the Defect:

> The main reason I upgraded to the LG V-50 from my LG V-40 was its supposed access to 5G networks. During the last year, I only got connected to 5G about three times at a few hot spots around Austin, where I live. Anyway, now that Sprint and T-Mobile have merged, the 5G

---

[3] T-Mobile shuts down Sprint's legacy 5G network, xda-developers.com (July 2, 2020), *available at* https://www.xda-developers.com/t-mobile-shuts-down-sprint-5g/ (last visited January 5, 2020).
[4] Sprint 5G rollout: Everything you need to know, digitaltrends.com (March 3, 2020), *available at* https://www.digitaltrends.com/mobile/sprint-5g-rollout/ (last visited January 5, 2020).
[5] T-Mobile shuts down Sprint's legacy 5G network, xda-developers.com (July 2, 2020), *available at* https://www.xda-developers.com/t-mobile-shuts-down-sprint-5g/ (last visited January 5, 2020).
[6] 4G vs. 5G: The key differences between the cellular network generations, businessinsider.com (December 22, 2020), *available at* https://www.businessinsider.com/4g-vs-5g (last accessed January 5, 2021).

BRESKIN | JOHNSON | TOWNSEND PLLC
1000 Second Avenue, Suite 3670
Seattle, Washington 98104  Tel: 206-652-8660

networks that the V-50 could access are no longer going to be supported. I got gypped on this phone, not because it isn't a great device - it is - but the 5G promise has been broken by Sprint's being bought out by T-Mobile. At minimum, owners of the Sprint version of the LG V-50s should be compensated by getting a substantial allowance for a new 5G capable phone that will work in the future.[7]

I purchased the new HTC 5G Hub to use with Sprint's 5G service. 45 days after I purchase it they remove 5G service from the ENTIRE service area and expect me to honor my contract with them. Upload and download speeds are now at 10% of what I had prior to the change. They also lied to me for three months telling me they were overhauling the system so it should be up in a month. Now they tell me it will no longer be available. Watch out for this company.[8]

8.     Other accounts from consumers who have been impacted by the Defect show that the alternate "offers" made to transition them to 5G-enabled devices compatible with T-Mobile's network would force them into more expensive plans and new payments for replacement devices. For example:[9]

 **TJ Denver** › Biggy Johnson
1 September, 2020

… I'm sticking on sprints $15/month unlimited everything plan until the cows come home!

can't beat $15/month!! (July 2018)

Reply 👍 👎

 **Biggy Johnson**
4 July, 2020

This is both good and bad, I am a sprint customer with a Oneplus 7 Pro 5g. The reason why its not that big of a deal is we never had 5g here in Minnesota. T-Mobil just sent me a email with offers on new 5g phones but I need to switch my plan at an additional cost of $45 per month + new phone payment to qualify for the upgrade, no thanks

Reply 👍 5 👎 1

---

[7] Sprint, consumeraffairs.com (October 17, 2020), *available at* https://www.consumeraffairs.com/cell_phones/sprint_pcs.htm?#sort=top_reviews&filter=none (last accessed January 5, 2021).
[8] Sprint, consumeraffairs.com (August 10, 2020), *available at* https://www.consumeraffairs.com/cell_phones/sprint_pcs.htm?page=5 (last accessed January 5, 2021).
[9] Sprint 5G is no more, as T-Mobile focuses on its own network, techcrunch.com (July 2, 2020), *available at* https://techcrunch.com/2020/07/02/sprint-5g-is-no-more-as-t-mobile-focuses-on-its-own-network/ (last accessed January 5, 2021).

9.      The rippling consequences of the impending Network release did not stop with T-Mobile's shutdown of Sprint's 5G network. To the contrary, customers with other Class Devices dependent on non-5G networks received similar notices wherein T-Mobile marketed the Network as a beneficial change despite it requiring that many customers purchase entirely new devices and/or sign up for more expensive and comprehensive Network plans.

10.     Specifically, less than a year after the shutdown of the 5G network, T-Mobile announced intentions to "retire" Sprint's "older 3G (CDMA) network" as well as Sprint's LTE network, their own 3G UMTS and GSM 2G networks all within 2022.[10] The first of these shutdowns was to be of the CDMA network, however it has quickly turned into a convoluted and burdensome process for consumers, representative of the Defect as a whole.

11.     T-Mobile set December 31, 2021 as the final day of CDMA service, later pushing the date to March 31, 2022 and offloading blame for the transitional failure and consumer dissatisfaction onto their "partners," like Dish who uses the CDMA network for their Boost Mobile customers and has shown resistance to the shutdown.[11] T-Mobile claims the delay resulted from these partners failing to appropriately "help their customers through [the] shift," ignoring their own role and duty to their customers.[12] March 31, 2022 passed by without the end of the network and consumers are left wondering about the longevity of the functionality of their devices. Certain consumer advocates suspect T-Mobile "silently delayed the sunset of the [CDMA] cell service by an additional two months to May 31, 2022."[13]

---

[10] T-Mobile Coverage: T-Mobile Network Evolution
https://www.t-mobile.com/support/coverage/t-mobile-network-evolution
[11] T-Mobile's CDMA shutdown already harms consumers, says coalition
 https://www.fiercewireless.com/operators/t-mobile-s-cdma-shutdown-already-harms-consumers-says-coalition
[12]T-Mobile: Update on our CDMA Network Transition Plans
https://www.t-mobile.com/news/business/update-on-our-cdma-network-transition-plans
[13] T-Mobile once again delays Sprint's CDMA network shutdown
https://www.androidpolice.com/tmobile-again-delays-sprint-cdma-network-shutdown/

12.     If such delays have occurred in only the first of four network shutdowns, consumers face unpredictable consequences and inconveniences as a direct result and part of the Defect which may last throughout the coming year and perhaps beyond. Defendant failed to adequately warn its customers that certain devices and contracts that they bought into would become useless before their reasonably expected lifespans. Now they fail even further to clearly communicate the impacts and timeline of the Defect which places the already biased onus of the network transitions even further onto consumers of the Class Devices.

13.     Plaintiff and members of the Class (defined below) who have experienced the Defect have been locked in their contract without being transitioned free of charge to T-Mobile's Network, so that they may take advantage of 5G connectivity without having to pay out of pocket for compatible devices or upgraded service to which they did not anticipate nor initially agree upon.

14.     Selling 5G data plans, in particular, with a limited shelf life and Class Devices unable to connect to existing 5G and other networks is a fraud on consumers. Sprint and T-Mobile refuse to honor their commitment to their loyal customers and are forcing customers to bear the expense of their mistakes and malfeasance.

15.     As a result of Defendant's unfair, deceptive and/or fraudulent business practices, owners of the Class Devices, including Plaintiff, have suffered an ascertainable loss of money and/or property and/or loss in value. Plaintiff and the Class members expended monies to benefit from higher data speeds or signed on for limited data plans to conserve money, but were not warned of the impending Defect and have suffered and continue to suffer financial and other injuries relating thereto. They have also suffered from a diminution in value of their non-Network compatible devices owing to the existence of the Defect. Accordingly, Plaintiff and the Class members have suffered injury in fact, incurred damages, and have otherwise been harmed by

Defendant's conduct. The unfair and deceptive trade practices committed by Defendant were conducted in a manner giving rise to substantial aggravating circumstances.

16.     Defendant was aware of the Defect. Not only did Defendant have exclusive, non-public knowledge and data concerning the continuing functionality of the Class Devices through their own testing and marketing data, customers' complaints, and warranty claims, but also it is or should be aware of consumer complaints on public forums. Therefore, Defendant was well aware of the Defect but failed to notify customers of the nature and extent of the problems to arise with the Class Devices which they continued to sell and for which they have failed to provide any adequate remedy.

17.     The Defect is material because it makes it impossible for Class Devices to take advantage of any T-Mobile network. Cellular network enabled and dependent devices cannot possibly serve their purpose when no network is compatible with them. As attested by Class members in scores of complaints on online forums, the Defect completely eliminates the device's network capabilities because they are not configured for the Network and compatible networks will no longer exist. As a result of the Defect, customers paid more for devices, particularly for those who invested in Sprint's 5G compatible devices, that can no longer meet even a fraction of their marketed capabilities.

18.     Defendant's failure to disclose the defect at the time of purchase is material because no reasonable consumer expects to spend more for a device whose advertised and differentiating features will be rendered useless in a few months' time or otherwise before its reasonably anticipated lifespan.

19.     Had Defendant disclosed the Defect, Plaintiff and Class members would not have purchased the Class Devices or would have paid less for them.

20.     Plaintiff demands that Defendant accept responsibility for phasing out Sprint's 5G network and the other various Sprint and T-Mobile networks while continuing to sell the Class Devices and allowing consumers to sign contracts for existing Devices.

1   T-Mobile refuses to accommodate, as well as reimburse Plaintiff and the Class for losses
2   suffered as a result of the Defect. In addition, or alternatively, Defendant should be
3   required to buy back the Class Devices.

4       21.    This case seeks protection and relief for owners of Class Devices for the
5   harm they have suffered from Defendant's breaches of express and implied warranties
6   and Defendant's unfair, unlawful, and deceptive trade practices.

7                    **II.    JURISDICTION, VENUE AND GOVERNING LAW**

8       22.    This Court has subject matter jurisdiction over this action pursuant to 28
9   U.S.C. § 1332(d) because: (i) there are 100 or more class members; (ii) the aggregate
10  amount in controversy exceeds $5,000,000, exclusive of interest and costs; and (iii) at
11  least one Plaintiff and Defendant are citizens of different states. This Court has
12  supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367.

13      23.    Venue is proper in this judicial district pursuant to 28 U.S.C. §1391
14  because Defendant transacts business in this district and is subject to personal
15  jurisdiction in this district, and therefore is deemed to be a citizen of this district.
16  Additionally, Defendant has advertised in this district and has received substantial
17  revenue and profits from the sales and/or leasing of Class Devices in this district.
18  Therefore, a substantial part of the events and/or omissions giving rise to the claims
19  occurred, in part, within this district.

20      24.    This Court has personal jurisdiction over Defendant because it has
21  conducted substantial business in this judicial district, and intentionally and purposefully
22  placed Class Vehicles into the stream of commerce within this district and throughout
23  the United States.

24      25.    In accordance with 28 U.S.C. § 1391, venue is proper in this district
25  because a substantial part of the conduct giving rise to Plaintiffs' claims occurred in or
26  emanated from this District, Defendant transacts business in this District, and Defendant
27  resides in this District.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

### III.   PARTIES

**A.  Plaintiff Jose Moreno**

26.     Plaintiff Jose Moreno is a citizen of California and resides in 45-601 Monroe Street, Apt. 32, Indio, CA 92201.

27.     On February 7, 2020 Plaintiff Garcia Moreno purchased a Class Device from Sprint's retail store located in 81952 CA-111 B, Indio, CA 92201.

28.     In deciding to purchase a Class Device, Plaintiff Garcia Moreno relied on Sprint's representations about the compatibility of his phone with T-Mobile's 5G network, none of which disclosed the Defect described herein.

29.     To fully benefit from the increased data speeds and usage enabled by Sprint's 5G network, Mr. Moreno opted to purchase Sprint's most expensive data plan, the Unlimited Premium plan, at $80/month.

30.     Two weeks after purchasing his phone, Plaintiff lost 5G connectivity and could only access 4G LTE data speeds.

31.     Plaintiff contacted Sprint to try to regain 5G connectivity, spending a considerable amount of time with customer support. He updated his device's profile and completed all troubleshooting steps recommended.

32.     Sprint advised Plaintiff to go to a T-Mobile Store to get a new SIM Card. A T-Mobile employee told Plaintiff that their SIM card was incompatible with his device but could not explain why. The T-Mobile employee told Plaintiff to search for his issue online to see whether other users had experienced the same problem and even went so far as to tell Mr. Moreno that Sprint had given him the short end of the bargain.

33.     On April 25, 2020, Plaintiff spoke with a Sprint representative using Sprint's chat feature and asked whether his device would lose 5G service due to the T-Mobile and Sprint merger. The Sprint representative responded, "No it will not [be] like that."

BRESKIN | JOHNSON | TOWNSEND PLLC
1000 Second Avenue, Suite 3670
Seattle, Washington 98104  Tel: 206-652-8660

34.     After months of going without 5G connectivity, Plaintiff again opened up the chat support on December 3, 2020. The Sprint representative recommended going through the same steps Plaintiff had already completed months back. Rather than being provided with a T-Mobile compatible device, the Sprint representative advised Plaintiff that he would have to pay off his current device and then upgrade to a new device.

35.     The OnePlus 7 Pro 5G Mr. Moreno purchased features 5G logos prominently on its packaging and even upon the device's start up screen.

36.     Had Mr. Moreno known of the Defect at the time of sale, he would not have purchased the phone or would have paid less for it to account for the defect.

**B. Defendant**

37.     Defendant T-Mobile US, Inc. is a telecommunication corporation that developed and distributed 5G infrastructure within the United States.

38.     Defendant is incorporated and headquartered in the State of Washington with its principal place of business at 3625 132nd Ave SE, Bellevue, Washington 98006.

39.     Defendant T-Mobile US, Inc. merged with Sprint Corporation and now oversees sales and other operations previously belonging to Sprint, across the United States.  Sprint Corporation, prior to and pending its merger with Defendant T-Mobile US, Inc., through its various entities, marketed and distributed 5G-enabled devices in Washington and multiple other locations in the United States.

## IV.     FACTUAL ALLEGATIONS

**A.     Sprint's 5G Network**

40.     Since at least May 30, 2019, Sprint rolled out its 5G coverage to include major metropolitan centers throughout the country, starting with Houston, Kansas City, Atlanta, and Dallas-Fort Worth.[14] Over the following months it would expand its 5G

---

[14] Sprint Lights Up True Mobile 5G in Houston, prnewswire.com (May 30, 2019), *available at* https://www.prnewswire.com/news-releases/sprint-lights-up-true-mobile-5g-in-houston-300858920.html (last accessed January 6, 2021).

BRESKIN | JOHNSON | TOWNSEND PLLC
1000 Second Avenue, Suite 3670
Seattle, Washington 98104  Tel: 206-652-8660

network to nine metropolitan areas and increase its coverage to include approximately 16 million people.[15]

41.    On August 27, 2019, Sprint supplemented its 5G offerings with an additional 5G enabled device, the OnePlus 7 Pro 5G[16], and a cloud gaming service that would be preloaded on 5G handsets.[17] Because of the faster download speeds and lower latency made available by 5G, Vice President of Sprint's 5G strategies said: "Sprint 5G customers will be able to play games instantly without having to wait to download or update games – a true breakthrough in the mobile universe."[18] Sprint's development and rollout of its 5G network, along with the representations it made to its customers, are material to a reasonable consumer because consumers want to ensure that devices purchased through the carrier will be compatible with the carrier's network.

42.    Sprint marketed, promoted, and expressly warranted that their deployed 5G network would work with 5G enabled devices.

43.    The Samsung Galaxy S10 5G, LG V50 ThinQ 5G, HTC 5G Hub, and the OnePlus 7 Pro 5G all run on Qualcomm's Snapdragon X50 5G modem. While the modem used supported Sprint's 2.5 GHz 5G network, it did not support T-Mobile's redeployed 5G network.[19] By contrast, another Sprint offering, the Samsung Galaxy S20 5G, featured a newer iteration of the Qualcomm chip—the X55 5G modem—which was

---

[15] Sprint Expands True Mobile 5G to Cover Approximately 16 Million People Within Nine Metropolitan Areas, prnewswire.com (Oct. 22, 2019), *available at* https://www.prnewswire.com/news-releases/sprint-expands-true-mobile-5g-to-cover-approximately-16-million-people-within-nine-metropolitan-areas-300942693.html (last accessed January 6, 2021).

[16] Sprint Lights Up True Mobile 5G in New York City, prnewswire.com (August 27, 2019), *available at* https://www.prnewswire.com/news-releases/sprint-lights-up-true-mobile-5g-in-new-york-city-300907615.html (last accessed January 6, 2021).

[17] Sprint & Hatch FTW! Hatch Cloud Gaming Now Available for Sprint 5G Customers, prnewswire.com (August 27, 2019), *available at* https://www.prnewswire.com/news-releases/sprint--hatch-ftw-hatch-cloud-gaming-now-available-for-sprint-5g-customers-300907292.html (last accessed January 6, 2021).

[18] *Id.*

[19] T-Mobile deactivates Sprint's legacy 2.5GHz 5G ahead of redeployments, fiercewireless.com (July 1, 2020), *available at* https://www.fiercewireless.com/5g/t-mobile-deactivates-sprint-s-legacy-2-5-ghz-5g-ahead-re-deployments (last accessed January 6, 2021).

BRESKIN | JOHNSON | TOWNSEND PLLC
1000 Second Avenue, Suite 3670
Seattle, Washington 98104  Tel: 206-652-8660

compatible with T-Mobile's 5G network because of its support for Sub-6 and Millimeter Wave 5G connectivity.

44.    T-Mobile's 5G network was initially based on a 600MHz low-band signal. The carrier repurposed Sprint's 2.5 GHz mid-band spectrum into its own network.[20] When it did so, the Class Devices were no longer able to receive a 5G signal.

45.    Sprint uniformly marketed, advertised, and warranted that its 5G smartphones would be compatible with its 5G network, all the while it awaited approval of its merger with T-Mobile, as shown in the packaging of the OnePlus 7 Pro 5G below:



46.    Plaintiff Garcia Moreno purchased a OnePlus 7 Pro 5G Smartphone through Sprint, along with its Unlimited Premium data plan, in order to fully utilize Sprint's 5G network. The fact that Sprint advertised and warranted that it possessed

---

[20] Have a Sprint 5G phone? T-Mobile will force some of you to upgrade, mashable.com (April 25, 2020), *available at* https://mashable.com/article/t-mobile-sprint-5g-incompatible-phones/ (last accessed January 6, 2021).

BRESKIN | JOHNSON | TOWNSEND PLLC
1000 Second Avenue, Suite 3670
Seattle, Washington 98104  Tel: 206-652-8660

compatibility with its 5G network was material to Plaintiff Garcia Moreno and to other reasonable consumers. Plaintiff Garcia Moreno specifically sought a phone with 5G connectivity because it provides faster data speeds than what is available, or even possible, on 4G LTE, and Plaintiff Garcia Moreno reasonably relied upon Sprint's representations and warranties contained in Sprint's marketing materials when he purchased his phone.

**B.      Defendant Had Superior and Exclusive Knowledge of the Defect**

47.     Upon information and belief, Defendant knew, or should have known, about the Defect through their exclusive knowledge of non-public, internal data about the Defect, including: (1) Network testing and market data; (2) their own records of customer complaints about the Defect from Defendant's retailers; (3) their own records of customers' complaints on consumer forums run by Defendant; (4) large swaths of consumer complaints on various public forums; (5) warranty and post-warranty claims; (6) any research, surveys, or other internal processes followed to investigate and respond to customer complaints described herein; and (7) other internal sources of aggregate information about the Defect. Defendant was well aware—or could and should have been reasonably aware—of the Defect but failed to notify its customers of the nature and extent of the problems with Class Devices or provide any adequate remedy for the Defect.

**C.      Defendant Has Actively Concealed the Defect**

48.     Despite its knowledge of the Defect impacting the Class Devices, Defendant actively concealed the existence and nature of the Defect from Plaintiff and Class members. Specifically, Defendant failed to disclose or actively concealed at and after the time of purchase of Class Devices:

  a.  that the Class Devices would become useless upon launch of Defendant's Network and consequent network shutdowns;

BRESKIN | JOHNSON | TOWNSEND PLLC
1000 Second Avenue, Suite 3670
Seattle, Washington 98104  Tel: 206-652-8660

b.  that the Class Devices grandfathered into previous service deals would be forced to not only end their contracts, often early, but also purchase new devices on more expensive plans in order to receive any level of service

c.  that the Defendant had no intention of offering an adequate remedy to the class members even upon notifying consumers of the Defect.

**D.   Defendant Has Unjustly Retained A Substantial Benefit**

49.     On information and belief, Plaintiff alleges that Defendant unlawfully failed to disclose the alleged defect to induce him and other putative Class members to purchase Class Devices.

## V.     CLASS ALLEGATIONS

50.     Plaintiff brings this action on behalf of himself, and on behalf of the following nationwide class pursuant to FED. R. CIV. P. 23(a), 23(b)(2), and/or 23(b)(3). Specifically, the nationwide class consists of the following:

**Nationwide Class**:
All persons or entities in United States who are current or former owners and/or lessees of a Class Device (the "Nationwide Class").

51.     In the alternative to the Nationwide Class, and pursuant to FED. R. CIV. P. 23(c)(5), Plaintiff seeks to represent the following state subclass only in the event that the Court declines to certify the Nationwide Class above:

**Washington Subclass**:
All persons or entities in Washington who are current or former owners and/or lessees of a Class Device (the "Washington Subclass").

52.     The Nationwide Class and the Washington Subclass are referred to herein as the "Class." Plaintiff reserves the right to modify, change, or expand the definitions of the Class based upon discovery and further investigation.

53.     The Class excludes the following: Defendant, its affiliates, and its current and former employees, officers and directors, and the Judge assigned to this case. Also

excluded are any current or former owners or lessees of Class Devices with individualized claims related to the Defect. Plaintiffs reserve the right to modify, change, or expand the definitions of the Nationwide Class and Washington Subclass based upon discovery and further investigation.

54. *Numerosity*: The Class is so numerous that joinder of all members is impracticable. At least hundreds of thousands of Class members have been subjected to Defendant' conduct. The class is ascertainable by reference to records in the possession of Defendant.

55. *Predominance*: Common questions of law and fact exist as to all members of the Class. These questions predominate over questions affecting individual members of the Class and include:

    a. Whether the Class Devices were sold with a Defect;

    b. Whether Defendant knew of the Defect at the time of sale;

    c. Whether Defendant failed to disclose the Defect;

    d. Whether Defendant actively concealed the Defect;

    e. Whether a reasonable consumer would consider the Defect or its manifestation to be material;

    f. Whether Defendant breached express and/or implied warranties;

    g. Whether Defendant must disclose the Defect; and

    h. Whether Defendant violated consumer protection statutes and the other claims asserted herein.

56. *Typicality*: Plaintiff's claims are typical of the claims of the members of the Class, as all such claims arise out of Defendant's conduct in designing, manufacturing, marketing, advertising, warranting, and selling the Class Devices. All of Plaintiff's claims are typical of the claims of the Class since Plaintiff and all Class members were injured in the same manner by Defendant's uniform course of conduct described herein. Plaintiff and all Class members have the same claims against Defendant relating to the

conduct alleged herein, and the same events giving rise to Plaintiff's claims for relief are identical to those giving rise to the claims of all Class members.  Plaintiff and all Class members sustained economic injuries including, but not limited to, ascertainable losses arising out of Defendant's course of conduct as described herein. Plaintiff is advancing the same claims and legal theories on behalf of himself and all absent Class members.

57.    *Adequacy*: Plaintiff will fairly and adequately protect the interests of the members of the Class and has no interests antagonistic to those of the Class. Plaintiff has retained counsel experienced in the prosecution of complex class actions including, but not limited to, consumer class actions involving, *inter alia*, breaches of warranties, product liability, product design defects, and state consumer fraud statutes.

58.    *Superiority*: A class action is superior to other available methods for the fair and efficient adjudication of this controversy, since individual joinder of all members of the Class is impracticable, and the amount at issue for each Class member would not justify the cost of litigating individual claims. Should individual Class members be required to bring separate actions, this Court would be confronted with a multiplicity of lawsuits burdening the court system while also creating the risk of inconsistent rulings and contradictory judgments. In contrast to proceeding on a case-by-case basis, in which inconsistent results will magnify the delay and expense to all parties and the court system, this class action presents far fewer management difficulties while providing unitary adjudication, economies of scale and comprehensive supervision by a single court.

59.    *Manageability*: Plaintiff is unaware of any difficulties that are likely to be encountered in the management of this action that would preclude its maintenance as a class action.

60.    Defendant has acted, and refused to act, on grounds generally applicable to the Class, thereby making appropriate final equitable relief with respect to the Class as a whole.

BRESKIN | JOHNSON | TOWNSEND PLLC
1000 Second Avenue, Suite 3670
Seattle, Washington 98104  Tel: 206-652-8660

## FIRST CAUSE OF ACTION

### BREACH OF EXPRESS WARRANTY, U.C.C. § 2-313

#### (On Behalf of the Nationwide Class and the Washington Subclass)

61.     Plaintiff incorporates by reference all preceding paragraphs as though fully set forth herein.

62.     Plaintiff brings this claim on behalf of himself and on behalf of the Class.

63.     "Any affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain creates an express warranty that the goods shall conform to the affirmation or promise." U.C.C. § 2-313(a)(1).

64.     Defendant's warranty of the Class Devices is an express warranty within the meaning of U.C.C. § 2-313.

65.     The express warranty covers the Defect and any damage proximately caused by the Defect, including repair or replacement of the Class Devices.

66.     Plaintiff and Class members reasonably and justifiably relied on Defendant's express warranty when purchasing the Class Devices.

67.     The express warranty fails of its essential purpose to the extent it excludes the Defect because: (1) the Defect unreasonably hinders the normal and foreseeable use of the Class Devices; (2) the Defect is not caused by improper use, neglect, accident, or any other cause outside of Defendant's control; and (3) Defendant is unable or unwilling to provide an adequate, effective, and lasting remedy and return the Class Devices to warranted condition.

68.     Defendant breached the express warranty because the Defect constitutes a defect in the fundamental material functionality of the Class Devices and Defendant is unable or unwilling to provide an adequate, effective, and lasting remedy and return the Class Devices to warranted condition.

1    69.    Defendant's breach deprived Plaintiff and Class members of the benefit of

2  the bargain.

3    70.    As a direct and proximate result of Defendant's conduct, Plaintiff and Class

4  members have been injured and sustained damages.

5  ### SECOND CAUSE OF ACTION

6  **BREACH OF IMPLIED WARRANTY**

7  **(On Behalf of the Nationwide Class and the Washington Subclass)**

8    71.    Plaintiff incorporates by reference all preceding paragraphs as though fully

9  set forth herein.

10    72.    Plaintiff brings this claim on behalf of himself and on behalf of the Class.

11    73.    Defendant is and was at all relevant times a merchant and seller of cellular

12  and other network-connecting devices within the meaning of the Uniform Commercial

13  Code and relevant state law.

14    74.    The Class Devices are and were at all relevant times goods within the

15  meaning of the Uniform Commercial Code and relevant state law.

16    75.    A warranty that the Class Devices were in merchantable condition and fit

17  for the ordinary purpose for which such devices are used as defined herein is implied by

18  law under the Uniform Commercial Code and relevant state law.

19    76.    Defendant knew or had reason to know of the specific use for which the

20  Class Devices were purchased. Defendant directly sold and marketed Class Devices to

21  customers through authorized retailers, like those from whom Plaintiff and members of

22  the Classes bought their devices, for the intended purpose of consumers purchasing the

23  devices. Defendant knew that the Class Devices would and did pass unchanged from

24  the authorized dealers to Plaintiff and members of the Classes, with no modification to

25  network compatibility.

26

27

PLAINTIFF'S CLASS ACTION COMPLAINT - 18
Case No.

BRESKIN | JOHNSON | TOWNSEND PLLC
1000 Second Avenue, Suite 3670
Seattle, Washington 98104  Tel: 206-652-8660

1
2
3

77.     Defendant provided Plaintiff and Class members with an implied warranty that the Class Devices and their components and parts are merchantable and fit for the ordinary purposes for which they were sold.

4
5
6
7
8

78.     This implied warranty included, among other things: (i) a warranty that the Class Devices and their hardware that were manufactured, supplied, distributed, and/or sold by the Defendant with network connectivity in mind, including reliable, affordable, and lasting connection; and (ii) a warranty that the Class Devices would be fit for this intended use while the Class used the Class Devices.

9
10
11
12
13
14

79.     Contrary to the applicable implied warranties, the Class Devices at the time of sale and thereafter were not fit for their ordinary and intended purpose of providing Plaintiff and Class members with reliable, affordable, and lasting network connection. Instead, the Class Devices are defective, including, but not limited to, the existence of the Defect at the time of sale and thereafter. Moreover, Defendant knew of the Defect at the time of sale and sold the Class Devices anyways.

15
16
17
18
19
20

80.     As a result of Defendant's breach of the applicable implied warranties, Plaintiff and members of the Classes of the Class Devices suffered an ascertainable loss of money, property, and/or value of their Class Devices. Additionally, as a result of the Defect, Plaintiff and members of the Classes were harmed and suffered actual damages in that the Class Devices are substantially certain to become non-functional before their reasonably expected lifespan has run its course.

21
22
23

81.     Defendant's actions, as complained of herein, breached the implied warranty that the Class Devices were of merchantable quality and fit for such use in violation of the Uniform Commercial Code and relevant state law.

24
25
26

82.     Plaintiff and members of the Classes have complied with all obligations under the warranty, or otherwise have been excused from performance of said obligations as a result of Defendant's conduct described herein.

27

BRESKIN | JOHNSON | TOWNSEND PLLC
1000 Second Avenue, Suite 3670
Seattle, Washington 98104  Tel: 206-652-8660

83.     Plaintiff and members of the Classes were not required to notify Defendant of the breach because affording Defendant a reasonable opportunity to cure its breach of warranty would have been futile. Defendant was, however, on notice of the Defect from the complaints it received from various Class members and through other internal sources.

84.     Moreover, Plaintiff has sent a notice letter to the Defendant seeking a remedy for the Defect alleged herein. When confronted with the allegations herein, Defendant has failed to remedy or otherwise provide adequate solution to the Defect.

85.     As a direct and proximate cause of Defendant's breach, Plaintiff and members of the Classes suffered damages and continue to suffer damages, including economic damages at the point of sale and diminution of value of their Class Devices. Additionally, Plaintiff and members of the Classes have incurred or will incur economic damages at the point of replacing their Class Devices and the heightened cost of Defendant's only Network option as well as additional losses.

86.     As a direct and proximate result of Defendant's breach of the implied warranty of merchantability, Plaintiff and members of the Classes have been damaged in an amount to be proven at trial.

## THIRD CAUSE OF ACTION

### BREACH OF WRITTEN WARRANTY UNDER THE MAGNUSON-MOSS WARRANTY ACT

### (15 U.S.C. § 2301, et seq.)

### (On Behalf of the Nationwide Class and the Washington Subclass)

87.     Plaintiff incorporates by reference all preceding paragraphs as though fully set forth herein.

88.     Plaintiff brings this claim on behalf of himself and on behalf of the Class.

89.     Plaintiff and Class members are each a "consumer" within the meaning of 15 U.S.C. § 2301(3).

90.     Defendant is a "supplier" and "warrantor" within the meaning of 15 U.S.C. §§ 2301(4) and (5).

91.     The Class Devices are a "consumer product" within the meaning of 15 U.S.C. § 2301(1).

92.     Defendant's warranty is a "written warranty" within the meaning of 15 U.S.C. § 2301(6).

93.     Defendant's implied warranty of merchantability implied in the contract for sale of the Class Devices is an "implied warranty" within the meaning of 15 U.S.C. § 2301(7).

94.     The amount in controversy of each individual claim is greater than $25 and the amount in controversy is greater than $50,000 (exclusive of interests and costs) computed on the basis of all claims to be determined in this suit.

95.     The warranties cover the Defect and any damage proximately caused by the Defect, including replacement of the Class Devices and increased monthly network service costs.

96.     Plaintiff and Class members reasonably and justifiably relied on Defendant' warranty when purchasing the Class Devices.

97.     Defendant represented to Plaintiff and Class members that the Class Devices were merchantable, high-quality, durable, and safe.

98.     The Defect caused the Class Devices to fail to conform to Defendant's representations.

99.     The Defect caused the Class Devices to be unfit for their ordinary purposes because the Defect prevents consumers from using the Class Devices for their primary intended purpose.

100.    The warranty fails of its essential purpose to the extent it excludes the Defect because the Defect unreasonably hinders the normal and foreseeable use of the Class Devices, the Defect is not caused by improper use, neglect, accident, or any other

1  cause outside of Defendant's control, and Defendant is unable or unwilling to provide

2  an adequate, effective, and lasting remedy and return the Class Devices to warranted

3  condition.

4        101.   Defendant's exclusion of implied warranties is void to the extent it excludes

5  a warranty of merchantability applicable to the Defect because the Defect causes the

6  warranty to fail of its essential purpose.

7        102.   Defendant breached the warranty because the Defect constitutes a defect

8  in materiality or workmanship and Defendant is unable or unwilling to provide an

9  adequate, effective, and lasting remedy and return the Class Devices to warranted

10  condition.

11        103.   Defendant breached the implied warranty because the Defect causes the

12  Class Devices to fail to conform to Defendant's representations and to be unfit for their

13  ordinary purpose and Defendant is unable or unwilling to provide an adequate, effective,

14  and lasting remedy and return the Class Devices to warranted condition.

15        104.   Defendant's breach deprived Plaintiff and Class members of the benefit of

16  the bargain.

17        105.   Accordingly, Defendant has also violated 15 U.S.C. § 45(a)(1) by way of

18  15 U.S.C. § 2310(b).

19        106.   As a direct and proximate result of Defendant's conduct, Plaintiff and Class

20  members have been injured and sustained damages.

<strong><u>FOURTH CAUSE OF ACTION</u></strong>

<strong>VIOLATIONS OF THE</strong>

<strong>WASHINGTON CONSUMER PROTECTION ACT</strong>

<strong>(Wash. Rev. Code. 19.86, <em>et seq.</em>)</strong>

<strong>(On Behalf of the Washington Subclass)</strong>

26        107.   Plaintiff incorporates by reference each preceding paragraph as though

27  fully set forth herein.

108.    Plaintiff Garcia Moreno brings this claim on behalf of himself and the Washington Subclass.

109.    Defendant is a "person" within the meaning of the Washington Consumer Protection Act ("WCPA"), Wash. Rev. Code § 19.86.010(1), and conducts "trade" and "commerce" within the meaning of the WCPA, WRC § 19.86.010(2).

110.    Plaintiff Garcia Moreno and members of the Washington Subclass are "persons" within the meaning of the WCPA, Wash. Rev. Code § 19.86.010(1).

111.    In the course of Defendant's business, it intentionally or negligently concealed and suppressed material facts concerning the Defect affecting the primary functionality of the Class Devices. Defendant accomplished this by failing to disclose the known and intended Network release and consequent shutdown of Class Device compatible networks, denying warranty claims arising from the defect, and denying the existence of the Defect.

112.    Defendant thus violated the WCPA, at a minimum by: (1) representing that the Class Devices have characteristics, uses, benefits, and qualities which they do not have; (2) representing that the Class Devices are of a particular standard, quality, and grade when they are not; (3) advertising the Class Devices with the intent not to sell them as advertised; (4) failing to disclose information concerning the Class Devices with the intent to induce consumers to purchase the Class Devices; and (5) otherwise engaging in conduct likely to deceive.

113.    Defendant intentionally and knowingly misrepresented material facts regarding the Class Devices with intent to mislead Plaintiff and the Washington Subclass.

114.    Defendant knew or should have known that its conduct violated the WCPA.

115.    Defendant owed Plaintiff and Washington class members a duty to disclose, truthfully, all the facts concerning the reliability of the Class Devices because it:

a.  Possessed exclusive knowledge of the Defect;

b.  Intentionally concealed the Defect from consumers; and

c.  Made incomplete or negligent representations about the Class Devices generally, while purposefully withholding material facts from Plaintiff and the Washington Subclass.

116.    Plaintiff and Washington Subclass members suffered ascertainable loss and actual damages as a direct and proximate result of Defendant' misrepresentations and its concealment of and failure to disclose material information. Plaintiff and the Washington Subclass members who purchased the Class Devices would not have purchased them at all and/or—if the Devices' true nature had been disclosed—would have paid significantly less for them. Plaintiff also suffered diminished value of his device, as well as lost or diminished use.

117.    Defendant's violations present a continuing risk to Plaintiff and the general public. Defendant's unlawful acts and practices complained of herein affect the public interest and are likely to be repeated.

118.    As a direct and proximate result of Defendant's actions described above, Plaintiff and the Washington Subclass members have been injured in fact and suffered damages, and seek relief in the form of actual damages, treble damages, and reasonable attorneys' fees, pursuant to Wash. Rev. Code § 19.86.090.

## FIFTH CAUSE OF ACTION

### COMMON LAW FRAUD

### (On Behalf of the Nationwide Class and the Washington Subclass)

119.    Plaintiff and the Class incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

1    120.    Plaintiff brings this claim on behalf of himself and the Nationwide Class

2    and the Washington Subclass.

3    121.    Defendant committed fraud by failing to disclose and actively concealing,

4    at the point of sale and otherwise, that the Class Devices are defective and would soon

5    be non-functional for their ordinary purpose. Defendant concealed the truth about the

6    Defect, intending for Plaintiffs and the Class to rely upon such concealment– which they

7    did.

8    122.    A reasonable consumer would not have expected their network compatible

9    Device to suffer from the Defect described herein. Plaintiff and the members of the Class

10   did not know of the facts which were concealed from them by Defendant. Moreover, as

11   consumers, Plaintiff and the members of the Class did not, and could not, unravel the

12   deception on their own.

13   123.    Defendant had a duty to disclose the defect. Defendant had such a duty

14   because the true facts were known and/or accessible only to it and because it knew

15   these facts were not known or reasonably discoverable by Plaintiff or the members of

16   the Class.

17   124.    As a direct and proximate result of Defendant's conduct, Plaintiff and

18   members of the Class have been harmed in that they purchased Class Devices they

19   otherwise would not have, paid more for Class Devices than they otherwise would, are

20   now being forced to pay a premium for network service outside of their contract, and are

21   left with Class Devices of diminished value and utility because of the defect.  Meanwhile,

22   Defendant has sold more Class Devices than it otherwise could have and charged

23   inflated prices for Class Devices, unjustly enriching itself thereby.

24   125.    Based on the foregoing, Plaintiff is entitled to all remedies available,

25   including refunds, actual damages, liquidated damages, punitive damages, attorney

26   fees and other reasonable costs.  Plaintiff and Class members request that the Court

27   award equitable relief, including an order requiring Defendant to adequately disclose

BRESKIN | JOHNSON | TOWNSEND PLLC
1000 Second Avenue, Suite 3670
Seattle, Washington 98104  Tel: 206-652-8660

1 and offer adequate remedy for the Defect and an order enjoining Defendant from failing
2 to disclose the Defect in future sales of Class Devices.

3 126.    Defendant's acts and omissions were done wantonly, maliciously,
4 oppressively, deliberately, with intent to defraud; in reckless disregard of the rights of
5 Plaintiff and the classes; and to enrich itself. Its misconduct warrants an assessment of
6 punitive damages in an amount sufficient to punish them and deter such conduct in the
7 future, which amount shall be determined according to proof at trial.

8 **SIXTH CAUSE OF ACTION**

9 **UNJUST ENRICHMENT**

10 **(On Behalf of the Nationwide Class and the Washington Subclass)**

11 127.    Plaintiff and the Class incorporate by reference each preceding and
12 succeeding paragraph as though fully set forth at length herein.

13 128.    Plaintiff brings this claim on behalf of himself and the Nationwide Class
14 and the Washington Subclass.

15 129.    This claim is pled in the alternative to Plaintiff's contract-based claims.

16 130.    Defendant knew or should have known that Plaintiff and the Class paid for
17 the Class Devices with the expectation that they would perform as represented and were
18 free from defects.

19 131.    Plaintiff and the Class conferred substantial benefits on Defendant by
20 purchasing the defective Class Devices. Defendant knowingly and willingly accepted
21 and enjoyed those benefits.

22 132.    Defendant's retention of these benefits is inequitable.

23 133.    As a direct and proximate cause of Defendant's unjust enrichment, Plaintiff
24 and the Class are entitled to an accounting, restitution, attorneys' fees, costs and
25 interest.

26 **RELIEF SOUGHT**

27 **WHEREFORE**, Plaintiff prays for judgment as follows:

A.      determine that the claims alleged herein may be maintained as a class action under Rule 23 of the Federal Rules of Civil Procedure, and issue an order certifying the Class(es) as defined above;

B.      appoint Plaintiff as the representatives of the Class and his counsel as Class Counsel;

C.      award all actual, general, special, incidental, statutory, punitive, and consequential damages to which Plaintiff and Class members are entitled;

D.      award pre-judgment and post-judgment interest on such monetary relief;

E.      grant appropriate injunctive and/or declaratory relief, including, without limitation, an order that requires Defendant to replace the Class Devices, offer adequate remedy for network changes and corresponding service fees and to extend the applicable warranties to a reasonable period of time, or, at a minimum, to provide Plaintiff and Class members with appropriate curative notice regarding the existence and cause of the Defect;

F.      award reasonable attorney's fees and costs; and

G.      grant such further relief that this Court deems appropriate.

## **JURY DEMAND**

Plaintiff and the Class members hereby demand trial by jury of all issues triable as of right by jury.

BRESKIN | JOHNSON | TOWNSEND PLLC
1000 Second Avenue, Suite 3670
Seattle, Washington 98104  Tel: 206-652-8660

DATED: June 15, 2022.

BRESKIN JOHNSON & TOWNSEND, PLLC

By: s/ Cindy Heidelberg
    Cindy Heidelberg, WSBA #44121
    1000 Second Avenue, Suite 3670
    Seattle, WA  98104
    (206) 652-8660
    cheidelberg@bjtlegal.com

MIGLIACCIO & RATHOD LLP

By: s/ Nicholas Migliaccio
    s/ Jason Rathod
    Nicholas Migliaccio, *pro hac vice* anticipated
    Jason Rathod, *pro hac vice* anticipated
    412 H Street NE, Suite 302
    Washington, DC  20002
    (415) 489-7004
    nmigliaccio@classlawdc.com
    jrathod@classlawdc.com

*Attorneys for Plaintiffs*