UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| JOSE LUIS GARCIA MORENO,<br><br>        Plaintiff,<br><br>   v.<br><br>T-MOBILE USA, INC.,<br><br>        Defendant. | CASE NO. 2:22-cv-00843-JHC<br><br>ORDER GRANTING MOTION TO COMPEL ARBITRATION |

**I**

**INTRODUCTION**

Pending before the Court is Defendant T-Mobile USA, Inc.'s motion to compel arbitration. Dkt. # 10 (motion); Dkt. # 15 (reply brief). Plaintiff Jose Luis Garcia Moreno opposes the motion. Dkt. # 14 (response brief).

For the reasons below, the Court GRANTS T-Mobile's motion to compel arbitration and STAYS this action pending that arbitration.

ORDER GRANTING MOTION TO COMPEL ARBITRATION - 1

## II

### BACKGROUND

In February 2020, Plaintiff bought a 5G-capable cell phone—the OnePlus 7 Pro 5G—from Sprint. Dkt. # 1 at 12–13. Plaintiff wanted that phone because of its 5G capabilities and the faster data speeds that come with it. *Id.* Sprint touted its 5G network (and the phones that operated on it), citing the network's widespread coverage and "blazing fast download speeds." *Id.* at 2.

A few months after Plaintiff's purchase, Sprint became a wholly owned subsidiary of T-Mobile. Dkt. ## 10 at 6 n.1; 11 at 1. The complaint asserts that around the time of this merger, the newly merged companies (now operating under the T-Mobile banner) suddenly began to "shut down older networks without addressing Network incompatibilities for numerous devices dependent on them." Dkt. # 1 at 1. The complaint says that "[t]he shutdown of Sprint's 5G network left approximately 75,000 sold 5G phones without the ability to receive a 5G signal," meaning that many devices "have or will become wholly unusable." *Id.* at 2–3.

Plaintiff agreed to several arbitration provisions during his relationship with Sprint and T-Mobile. When Plaintiff first obtained his phone through the Sprint Flex Agreement, he agreed to arbitrate any disputes with Sprint:

> **Mandatory Arbitration and Class Action Waiver: PLEASE READ THIS CAREFULLY; IT AFFECTS YOUR RIGHTS. . . . <u>If you are a consumer</u>, and if a dispute is not resolved through the Dispute Resolution process outlined in Sprint's Consumer Terms or through communications with Customer Care, you agree that, instead of suing in court, all disputes must be resolved through an individual arbitration or small claims court. You agree that, by entering into this Lease Agreement, YOU WAIVE THE RIGHT TO A TRIAL BY JURY AND YOU MAY BRING CLAIMS ONLY IN AN INDIVIDUAL CAPACITY, AND NOT AS A CLASS MEMBER IN ANY PUTATIVE CLASS OR REPRESENTATIVE PROCEEDING. <u>Further, the details of the process, terms and effect of the dispute resolution, arbitration, and waiver of class action provisions set forth in the Consumer Terms are incorporated into**

**this Lease Agreement, and you are subject to them.** This agreement to arbitrate is intended to be broadly interpreted.

Dkt. # 11 at 11 (emphases in original).

Plaintiff also agreed to arbitrate when he "activated" service.  Dkt. ## 10 at 7–8; 11 at 3.  When doing so, he agreed to be bound by Sprint's then-applicable Terms and Conditions (the 2017 Terms and Conditions).  *Id.*  Those Terms and Conditions contained an arbitration provision.  The 2017 Terms stated:

> **DISPUTE RESOLUTION AND ARBITRATION**
>
> PLEASE READ THIS CAREFULLY; IT AFFECTS YOUR RIGHTS
>
> **How will we resolve disputes? Through mandatory arbitration and waiver of class action.** If we have a dispute, we agree to resolve it using arbitration or small claims court. We also agree to resolve our issues in a suit with only two parties (you and Sprint) instead of by class action (thousands of people and Sprint). In arbitration, an arbitrator replaces the judge and jury. Disputes are ANY (we really mean ANY) disagreements about our relationship.
>
> . . .
>
> **How does arbitration work?** The arbitration will be heard by a single arbitrator, follow a standard set of rules (known as the JAMS Rules) and will be located in your home county of your billing address. The Federal Arbitration Act ("FAA") applies to this Agreement and arbitration provision. We feel very strongly that we should resolve claims on an individual, and not class, basis. Sprint will pay for any filing or case management fees associated with the arbitration and the professional fees for the arbitrator's services. The arbitrator will write an award explaining the decision and the findings and conclusions supporting it.
>
> . . .
>
> **What about going to court? We won't go to court, there will be no jury trial and no class action.** If somehow we end up in court, we agree that a judge will resolve our dispute rather than a jury and we will litigate individually instead of as part of a group, or class.

Dkt. # 11 at 16–17 (emphases in original).

Following the merger, T-Mobile updated its Terms and Conditions.  The arbitration provisions of the new, 2020 Terms and Conditions look much like those found in the 2017

ORDER GRANTING MOTION TO COMPEL ARBITRATION - 3

Terms and Conditions, incorporating similar mandatory arbitration and class action waiver provisions.  *See* Dkt. # 11 at 73–75.  But the 2020 Terms provide that arbitration will be administered according to American Arbitration Association (AAA) rules instead of JAMS rules, and that the AAA arbitration rules will apply:

> The arbitration of all disputes will be administered by the AAA under its Consumer Arbitration Rules then in effect at the time the arbitration is commenced, except to the extent any of those rules conflicts with this Agreement, in which case this Agreement will govern. The AAA rules are available at www.adr.org.

*Id.* at 74.  Plaintiff received notice of this update to the Terms in several billing statements.  *Id.* at 3.

In February 2021, Plaintiff upgraded his phone by buying a new Samsung Galaxy S21 Ultra 5G.  Dkt. ## 10 at 10; 11 at 4.  To finance that transaction, he agreed to another contract, which similarly contained an arbitration provision:

> **Dispute Resolution and Arbitration; CLASS ACTION WAIVER.** . . . **PLEASE READ THIS CAREFULLY; IT AFFECTS YOUR RIGHTS.** . . . If you are a consumer buyer, and if a dispute is not resolved through the Dispute Resolution process outlined in the Consumer Terms applicable to the Service or through communications with Customer Care, you agree that, instead of suing in court, all disputes must be resolved through an individual arbitration or small claims court. You agree that, by entering into this agreement, **YOU WAIVE THE RIGHT TO A TRIAL BY JURY AND MAY BRING CLAIMS ONLY IN AN INDIVIDUAL CAPACITY, AND NOT AS A CLASS MEMBER IN ANY PUTATIVE CLASS OR REPRESENTATIVE PROCEEDING.** Further, the details of the process, terms and effect of the dispute resolution, arbitration, and waiver of class action provisions set forth in the Consumer Terms are incorporated into this agreement, and you are subject to them. This agreement to arbitrate is intended to be broadly interpreted.

Dkt. # 11 at 81–82 (emphases in original).

And throughout, Plaintiff received notice of the Terms and Conditions.  *Id.* at 3.  Each monthly billing statement referred to the most recent version of the Terms of Conditions.  *Id.*

ORDER GRANTING MOTION TO COMPEL ARBITRATION - 4

Plaintiff filed this action against T-Mobile on behalf of himself and a putative class of similarly situated individuals. He alleges breach of express and implied warranty, breach of written warranty under the Magnuson-Moss Warranty Act, violations of Washington's Consumer Protection Act (CPA), fraud, and unjust enrichment. Dkt. # 1 at 17–27. In response, T-Mobile moved to compel arbitration. Dkt. # 10.

### III

### DISCUSSION

A.  Motion to Compel Arbitration

Under the Federal Arbitration Act (FAA), written agreements to arbitrate "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. The FAA reflects a "liberal federal policy favoring arbitration agreements." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24–25 (1983). In passing the FAA, Congress "directed courts to abandon their hostility and instead treat arbitration agreements as 'valid, irrevocable, and enforceable.'" *Epic Sys. Corp. v. Lewis*, 138 S. Ct. 1612, 1621 (2018) (quoting 9 U.S.C. § 2). "The overarching purpose of the FAA . . . is to ensure the enforcement of arbitration agreements according to their terms so as to facilitate streamlined proceedings." *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 344 (2011).

When evaluating a motion to compel arbitration, courts generally limit their review to two issues: "(1) whether there is an agreement to arbitrate between the parties; and (2) whether the agreement covers the dispute." *Brennan v. Opus Bank*, 796 F.3d 1125, 1130 (9th Cir. 2015). But even these "gateway" issues "can be expressly delegated to [an] arbitrator where 'the parties *clearly and unmistakably* provide otherwise.'" *Id.* (quoting *AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 649 (1986)); *see also Rent-A-Ctr., W., Inc. v. Jackson*, 561 U.S. 63, 68–69 (2010) ("We have recognized that parties can agree to arbitrate 'gateway' questions of

ORDER GRANTING MOTION TO COMPEL ARBITRATION - 5

'arbitrability,' such as whether the parties have agreed to arbitrate or whether their agreement covers a particular controversy."). If there is a valid delegation provision, then "a court must enforce an agreement that . . . clearly and unmistakably delegates arbitrability questions to the arbitrator." *Brennan*, 796 F.3d at 1132.

As an initial matter, Plaintiff does not appear to challenge the existence of various arbitration agreements or the fact that he agreed to arbitrate. *See* Dkt. # 14 at 2 (stating that he does not challenge the "procedural aspects" of T-Mobile's motion, such as the existence of an applicable arbitration provision). His brief does not argue, for example, that he never formally assented to an arbitration agreement, that his assent was secured by coercion or fraud, or that he lacked notice of the arbitration provisions. Instead, he "challenges the substantive conscionability of the T-Mobile arbitration agreement[s]." *Id.* He argues that the T-Mobile arbitration agreements are "substantively unconscionable because [they] eliminate[] a crucial substantive right under the CPA to seek an injunction to protect the public interest." *Id.* Because, Plaintiff says, the arbitration clauses impair his "right to seek injunctive relief on behalf of others," the agreements to arbitrate are substantively unconscionable. *Id.* at 6.

In essence, Plaintiff challenges the "arbitrability" of one of his claims. He argues that his CPA claim—based in part on a request for "public" injunctive relief—is not arbitrable because Washington law does not permit a party to contractually waive such a right to relief, rendering that waiver unconscionable.

Before a court can address the "arbitrability" of a claim, however, it must determine whether the parties have agreed to "delegate" arbitrability questions to an arbitrator. The Supreme Court has explained that an "agreement to arbitrate a gateway issue is simply an additional, antecedent agreement the party seeking arbitration asks the federal court to enforce, and the FAA operates on this additional arbitration agreement just as it does on any other."

ORDER GRANTING MOTION TO COMPEL ARBITRATION - 6

*Rent–A–Center*, 561 U.S. at 70.  So "[w]hen the parties' contract delegates the arbitrability question to an arbitrator, a court may not override the contract.  In those circumstances, a court possesses no power to decide the arbitrability issue." *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 139 S. Ct. 524, 529 (2019).  "[I]f a valid agreement exists, and if the agreement delegates the arbitrability issue to an arbitrator, a court may not decide the arbitrability issue." *Id.* at 530.

To determine whether the parties have delegated arbitrability to an arbitrator, a court must look to whether the parties' agreement provides "'clear and unmistakable' evidence" that the parties intended to delegate the question to arbitrator.  *Henry Schein*, 139 S. Ct. at 530 (quoting *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 944 (1995)); *see also Brennan*, 796 F.3d at 1130 ("[G]ateway issues [of arbitrability] can be expressly delegated to the arbitrator where 'the parties *clearly and unmistakably* provide otherwise." (quoting *AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 649 (1986))); *First Options*, 514 U.S. at 944 ("[C]ourts should not assume that the parties agreed to arbitrate arbitrability unless there is 'clea[r] and unmistakabl[e]' evidence that they did so." (second and third alterations in original) (citation omitted)).

A contract need not always contain an express delegation provision to satisfy the "clear and unmistakable" requirement.  In *Brennan v. Opus Bank*, 796 F.3d 1125 (9th Cir. 2015), the Ninth Circuit considered a contract that expressly incorporated the AAA arbitration rules but did not otherwise contain a delegation clause.  The Ninth Circuit held that "incorporation of the AAA rules constitutes clear and unmistakable evidence that contracting parties agreed to arbitrate arbitrability." *Id.* at 1130.  This is so, the court said, because the applicable AAA rules themselves included a provision which gave the arbitrator "the power to rule on his or her own jurisdiction, including any objections with respect to the . . . validity of the arbitration

ORDER GRANTING MOTION TO COMPEL ARBITRATION - 7

agreement." *Id.* Recounting its earlier observation in *Oracle America, Inc. v. Myriad Group A.G.*, 724 F.3d 1069 (9th Cir. 2013), the Ninth Circuit reiterated that "[v]irtually every circuit to have considered the issue has determined that incorporation of the [AAA] arbitration rules constitutes clear and unmistakable evidence that the parties agreed to arbitrate arbitrability." *Brennan*, 796 F.3d at 1130 (alterations in original) (quoting *Oracle*, 724 F.3d at 1074).

The Ninth Circuit in *Brennan* carefully outlined the scope of its holding. The court said that its "holding does not foreclose the possibility that this rule could also apply to unsophisticated parties or to consumer contracts." *Id.* at 1030. But the court expressly "limit[ed] [its] holding to the facts of the present case, which do involve an arbitration agreement between sophisticated parties." *Id.* at 1131 (citation and quotation marks omitted).

T-Mobile argues that the contracts clearly and unmistakably delegated questions of arbitrability to an arbitrator. Dkt. ## 10 at 18–19; 15 at 6–7. The contracts at issue have no express delegation provisions. But the contracts incorporate various arbitration rules into the agreements. The 2017 Terms and Conditions state that arbitration "will be heard by a single arbitrator, follow a standard set of rules (known as the JAMS Rules)." Dkt. # 11 at 17. The 2020 Terms are similar, but call for arbitration according to "American Arbitration Association" rules or "AAA Rules." *Id.* at 65, 74. Therefore, T-Mobile says that under *Brennan*, the parties delegated arbitrability to an arbitrator. Dkt. ## 10 at 18–19; 15 at 6–7. T-Mobile also points to the breadth of the arbitration provisions, which state (using slightly different phrasing) that the parties will arbitrate "all disputes." Dkt. # 11 at 11, 27. In the 2017 Terms and Conditions, for example, the agreement states that the parties will resolve any "dispute" through arbitration or small claims court, and then defines "[d]ispute[]" to mean "ANY (we really mean ANY) disagreements about our relationship." Dkt. # 11 at 65.

ORDER GRANTING MOTION TO COMPEL ARBITRATION - 8

In his brief, Plaintiff does not address the delegation issue.  *See generally* Dkt. # 14.  Plaintiff does not rebut T-Mobile's argument that the incorporation of the AAA (or JAMS[1]) rules show an intent to delegate arbitrability questions.  Nor does Plaintiff distinguish this case from *Brennan*.  Plaintiff does not, for example, suggest that the Court should distinguish between sophisticated and unsophisticated parties, or that Plaintiff is, in fact, unsophisticated.  And Plaintiff does not make any argument about delegation based on the structure or text of the contracts.  Accordingly, the Court concludes that Plaintiff has conceded the issue, that *Brennan* controls, and that the parties delegated arbitrability to an arbitrator.[2]

In a contract that delegates arbitrability to an arbitrator, the court's role is narrow.  In *Rent-A-Center, West, Inc. v. Jackson*, 561 U.S. 63 (2010), the Supreme Court clarified that for such a contract, the challenging party cannot merely attack the arbitration agreement as a whole.  *Id.* at 73–74.  Rather, the party must "challenge[] the delegation provision *specifically*."  *Id.* at 72 (emphasis added).  This is because a delegation provision is "simply an additional, antecedent agreement the party seeking arbitration asks the federal court to enforce, and the FAA operates on this additional arbitration agreement just as it does on any other."  *Id.* at 70.  And so long as

---

[1] T-Mobile focuses on the contracts' incorporation of the AAA arbitration rules.  There is no reason to think that the analysis differs when a contract incorporates the JAMS arbitration rules instead, which contain a similar provision granting the arbitrator the power to determine questions of arbitrability.  *See, e.g.*, *Patrick v. Running Warehouse, LLC*, No. 221CV09978ODWJEMX, 2022 WL 10584136, at *3–4 (C.D. Cal. Oct. 18, 2022); *O'Connor v. Warner Bros. Animation Inc.*, No. 2:20-cv-09291-MCS (JPRx), 2021 WL 3598581, at *2 (C.D. Cal. Jan. 21, 2021) ("The agreements' incorporation of the JAMS arbitration rules also constitutes clear and unmistakable evidence of an agreement to arbitrate arbitrability.").

[2] To be sure, the Court has doubts about whether the mere incorporation of certain arbitration rules will always provide "clear and unmistakable" evidence of an intent to delegate, at least for unsophisticated parties.  *See, e.g.*, *Tompkins v. 23andMe, Inc.*, No. 5:13-CV-05682-LHK, 2014 WL 2903752, at *11–13 (N.D. Cal. June 25, 2014), *aff'd*, 840 F.3d 1016 (9th Cir. 2016); *Eiess v. USAA Fed. Sav. Bank*, 404 F. Supp. 3d 1240, 1252–54 (N.D. Cal. 2019).  But given the overwhelming body of existing case law, *see Blanton v. Domino's Pizza Franchising LLC*, 962 F.3d 842, 846 (6th Cir. 2020), and Plaintiff's silence on the issue, the Court concludes that, at least in this case, incorporation of arbitration rules suggests an intent to delegate arbitrability questions.

ORDER GRANTING MOTION TO COMPEL ARBITRATION - 9

the "antecedent" agreement to delegate arbitrability is valid, then a court must enforce the delegation provision as written. The Court in *Rent-A-Center* concluded that the challenger "did not make any arguments specific to the delegation provision," and so the Court "[did] not consider [his unconscionability argument] because none of Jackson's substantive unconscionability challenges was specific to the delegation provision." *Id.* at 74; *see also id.* at 72 (holding that the district court did not err when compelling arbitration because "[n]owhere in his opposition to Rent–A–Center's motion to compel arbitration did he even mention the delegation provision").

In *Brennan*, the Ninth Circuit confirmed this understanding of *Rent-A-Center*. The court concluded that "[b]ecause a court must enforce an agreement that, as here, clearly and unmistakably delegates arbitrability questions to the arbitrator, the only remaining question is whether the particular agreement *to delegate* arbitrability—the Delegation Provision—is itself unconscionable." *Brennan*, 796 F.3d at 1132. And because the plaintiff failed to challenge the delegation provision specifically—instead arguing that the broader arbitration agreement as a whole was unconscionable—the Ninth Circuit held that the district court properly enforced the arbitration agreement's delegation provision and compelled arbitration. *Id.* at 1132–34.

Like the challengers in *Brennan* and *Rent-A-Center*, Plaintiff's substantive unconscionability argument does not specifically target the contract's delegation of arbitrability (he does not, for example, argue that the delegation *itself* is unconscionable). Instead, Plaintiff argues that the arbitration agreements (or at least a portion of them) are unconscionable because they deny him the right to pursue injunctive relief on behalf of the public. Because the contracts validly delegate arbitrability to an arbitrator, and because Plaintiff has not challenged the validity of that delegation, the Court must enforce that delegation. *See Brennan*, 796 F.3d at 1132–34. It

ORDER GRANTING MOTION TO COMPEL ARBITRATION - 10

must leave the question of the unconscionability of the contracts' purported bar on public injunctive relief to an arbitrator.[3]

B.      Stay or Dismiss Proceedings

T-Mobile asks the Court to stay this action pending completion of arbitration. Dkt. ## 10 at 19; 15 at 13. The FAA directs courts to "stay the trial of the action until such arbitration has been had." 9 U.S.C. § 3. Notwithstanding this language, the Ninth Circuit has held that a "district court may either stay the action or dismiss it outright when, as here, the court determines that all of the claims raised in the action are subject to arbitration." *Johnmohammadi v. Bloomingdale's, Inc.*, 755 F.3d 1072 (9th Cir. 2014) (citing *Sparling v. Hoffman Constr. Co.*, 864 F.2d 635, 638 (9th Cir. 1988).

Neither party presents any argument about whether the Court should stay this proceeding or dismiss it outright. Accordingly, the Court adopts T-Mobile's request to stay the action.

IV

CONCLUSION

The Court GRANTS T-Mobile's motion to compel arbitration (Dkt. # 10) and STAYS this action pending arbitration. The Court ORDERS the parties to (1) submit a joint status report every six months from the date of this order until arbitration has concluded, and (2) submit a joint status report within ten days of the conclusion of arbitration.

---

[3] There may be other problems with Plaintiff's unconscionability theory. For example, it is unclear why the Washington CPA governs when the contract contains a choice-of-law provision that applies the law of the customer's home state (here, California). Dkt. ## 11 at 65; 1 at 9. And it is unclear what "public" injunctive relief Plaintiff seeks (because his complaint does not request injunctive relief on his CPA claim), or whether Washington law considers a contractual waiver of the right to seek such injunctive relief unconscionable. But these questions must be addressed by an arbitrator in the first instance, not the Court.

Dated this 25th day of January, 2023.

*John H. Chun*
John H. Chun
United States District Judge